No. 28,066.

JOHN D. BECK, as Administrator, etc., of the Estate of Venetia E. Gardner, *Appellee*, v. HENRY W. WACKER, *Defendant*, and THE FIDELITY AND DEPOSIT COMPANY of Maryland, *Appellant*.

(272 Pac. 175.)

Opinion filed December 8, 1928.

*John W. Davis, Russell L. Hazzard*, both of Greensburg, and *Manvel H. Davis*, of Kansas City, Mo., for the appellant.

*John D. Beck* and *O. G. Underwood*, both of Greensburg, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one by an administrator with will annexed against a removed executor and the surety on his bond, for money and the value of property for which the executor failed to account. Plaintiff recovered, and the surety appeals.

Venetia E. Gardner died testate. The will designated the defendant, Henry W. Wacker, as executor. He was duly appointed by the probate court, and in qualifying gave bond signed by the defendant, the Fidelity and Deposit Company of Maryland. The bond was approved on March 27, 1923. At the time of her death the testatrix had on deposit in the Home State Bank, of Greensburg, the sum of $1,106.39. Under the law title to the deposit vested in the executor. Subsequently the executor collected a note forming part of the assets of the estate, and deposited the proceeds, amounting to $443.37, in the Home State Bank, in his name as executor.

Part of the assets of the estate consisted of rent wheat produced by G. A. Keller on land owned by the testatrix before her death. The executor directed Keller to deliver the wheat to the Greensburg Grain Company. Keller did so in July, 1923, and the executor was present at the company's elevator when the first load of wheat was delivered. The value of the wheat was $665.40.

On October 10, 1923, the Home State Bank was closed by the bank commissioner, and a receiver was appointed to wind up its affairs. Soon thereafter the grain company failed. The executor filed no report, and in January, 1925, he was removed. While in office he received a dividend on the bank deposit, amounting to $154.97, for which he accounted. He did not account for the remainder of the deposit, and he did not account for the wheat. The administrator with will annexed was paid a dividend by the receiver of the bank, amounting to $232.46. The executor's delinquency amounted to $1,827.73, which with interest made up the amount of the judgment, $2,065.33.

The first question is whether, in the exercise of reasonable prudence, the executor should have withdrawn the money deposited by the testatrix and himself in the Home State Bank before it failed.

The executor owned a majority of the stock of the bank, was president of the bank, and was the active manager of its affairs. He testified that for a considerable period before the bank closed he was obliged to rediscount a considerable quantity of its paper, not merely in due course of business, but "to keep the Home State Bank going." The will made a number of small bequests—$100 each to twelve beneficiaries. The probate judge suggested to the executor that he pay these bequests and get them out of the way, and afterwards urged the executor to do so. No formal order that he pay the bequests was entered, but the question is one of due care, and not of liability for failure to obey orders of the court. Keller's daughter was the beneficiary of one of the bequests referred to. He talked to the executor a number of times in the summer of 1923 about payment of those bequests. The executor's responses to the probate judge and to Keller were that he did not have the money to pay them. Money enough stood to his credit on the books of the bank. He did have the money, unless the bank was in an embarrassed condition, and in that event it was incumbent on him to transfer his executor's account to some sound bank. The executor was asked if bank drafts had not been allowed to go to protest. On advice of

counsel he refused to answer. The presumption is the answer would have been adverse to his interest. (*Belknap v. Sleeth,* 77 Kan. 164, 93 Pac. 580.) The evidence disclosed that the executor was convicted of embezzling, abstracting, and misapplying funds belonging to and on deposit in the Home State Bank, and at the time of the trial he was serving sentence in the penitentiary.

Plainly, the evidence was sufficient to establish breach of official duty on the part of the executor and liability on the bond.

The Greensburg Grain Company was a partnership consisting of the executor and another. As indicated, Keller testified the executor requested the wheat be delivered to the grain company, and it was delivered to the grain company at its elevator. The executor testified he supposed the wheat was mingled with other wheat, was shipped out, and the grain company received the proceeds. The executor testified the grain company failed because of loss in speculation on the board of trade. It seems quite unnecessary to set down in a judicial opinion the duty of the executor with reference to the handling of the rent wheat.

The foregoing covers the merits of this case. The findings of fact and conclusions of law are criticized in some particulars, but it is not necessary to discuss the criticisms in detail. The judgment is clearly correct, and it is affirmed.